IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05-cv-2015 |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION UNDER RULE 65(a)(2) AND RULE 57 FOR AN ORDER THAT THE MERITS OF PLAINTIFF'S ACTION FOR DECLARATORY JUDGMENT BE ADVANCED AND CONSOLIDATED WITH THE HEARING OF ITS APPLICATION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rules of Civil Procedure 65(a)(2) and 57, Plaintiff Pharmaceutical Research and Manufacturers of America ("PhRMA") hereby submits this memorandum of points and authorities in support of its motion for an order consolidating the upcoming hearing on PhRMA's Motion for Preliminary Injunction with a trial on the merits. Advancing consideration of the merits of PhRMA's challenge to the Prescription Drug Excessive Pricing Act of 2005 ("the D.C. Act" or "the Act") is proper because PhRMA's suit presents legal issues that are appropriate for summary judgment. Moreover, providing a speedy hearing of PhRMA's request for a declaratory judgment and resolving its claims at this time is necessary to ensure that the Court is able to rule on the validity of the D.C. Act at the time it goes into effect. As even the D.C. defendants have tacitly recognized, in the absence of a temporary restraining order preventing the Act from becoming effective, only final declaratory relief invalidating the Act

prior to or within days of its effective date can protect PhRMA members from having to take potentially injurious steps to reduce their liability risk and from having to defend a multitude of lawsuits seeking to enforce an unconstitutional law.

## BACKGROUND

In this action, PhRMA challenges a sweeping new District of Columbia law that threatens to disrupt the system Congress has established to promote pharmaceutical innovation and safeguard the public health, and that purports to regulate transactions outside D.C.'s borders in interstate and foreign commerce. The D.C. Act makes it unlawful for a drug manufacturer to sell a patented prescription drug *anywhere in the country* if the sale at any point "results in the prescription drug being sold in the District for an excessive price." Act § 2 (proposed D.C. Code § 28-4553). The Act defines an "excessive price" with reference to the prices set under foreign systems of government-controlled healthcare.

The Act was signed by the Mayor on October 4, 2005, was published in the D.C. Register on October 14, 2005, and will take effect unless the United States Senate and House of Representatives adopt a joint resolution disapproving the Act within thirty legislative days of the Act's transmission to Congress and the resolution is either signed by the President or passed over the President's veto. Act § 4 (effective date); D.C. Code § 1-206.02(c)(1). Depending on Congress's schedule, the effective date could be as early as late November, 2005. Once the Act becomes effective, PhRMA's manufacturer members will have to consider taking immediate steps, including potential changes in their business practices, to reduce their risk of liability under the Act. Moreover — and critically for purposes of this motion — upon the effective date PhRMA's members will be subject to a hailstorm of litigation by "private attorneys general." The Act permits "[a]ny affected party, including the District of Columbia," to file suit claiming a

2

violation of the Act, D.C. Code § 28-4555(a), and it defines an "affected party" as "any person directly or indirectly affected by excessive prices of patented prescription drugs, including any organization representing such persons *or any person or organization representing the public interest.*" *Id.* § 28-4552(1).  Because a primary enforcement mechanism of the Act is the potential and reality of such private suits for treble damages and injunctions, injunctive relief from this Court prohibiting enforcement by D.C. itself will not protect PhRMA members from the unconstitutional harms of the Act — private lawsuits will produce unconstitutional enforcement and its harms as fully as suits by a government plaintiff.  And justice delayed will be tantamount to justice denied, because it will come after a period when the Act's provisions will be in effect, unconstitutionally regulating commerce and injuring PhRMA members, and after any number of private enforcement actions are already under way.

As explained in PhRMA's Motion for Preliminary Injunction, the Act violates the Supremacy Clause and is preempted by the federal patent laws: It targets *patented* prescription drugs and attempts to change the incentives Congress provided for obtaining a U.S. Patent by punishing patent holders for realizing the very incentives to innovation that Congress intended. The D.C. Act also violates the Interstate Commerce Clause by regulating commercial transactions that take place wholly beyond the District's borders.  By tying the price of pharmaceuticals sold in the District to the prices paid in other countries, the Act also violates the Foreign Commerce Clause.  Finally, by inviting local courts to render judgment on the wisdom of foreign governments' public health regimes, the Act impermissibly treads upon Congress's exclusive constitutional authority to conduct foreign affairs.  For these reasons, PhRMA has sought a declaration that the Act is invalid and a preliminary and permanent injunction against

3

the District's enforcement of the Act. But only a declaratory judgment issued on or within days of the effective date can prevent the unconstitutional injuries caused by the private suits.

## ARGUMENT

Federal Rule of Civil Procedure 65 permits "the court [to] order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Fed. R. Civ. Pro. 65(a)(2); *see also TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 79 (D.D.C. 2003) (invoking Rule 65(a)(2) to consider merits of plaintiff's Administrative Procedure Act challenge to FDA regulation), *aff'd*, 354 F.3d 877 (D.C. Cir. 2004); *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 201 (D.D.C. 2002) (invoking Rule 65(a)(2) to treat plaintiff's motion for a preliminary injunction as a motion for summary judgment on the merits of plaintiff's claims); *American Fed'n of Gov't Employees v. Rivlin*, No. 95-2115, 1995 WL 697236, at *5 (D.D.C. 1995) (granting plaintiff's request for consolidation of motion for preliminary injunction with motion for permanent injunction over defendants' objection). Federal Rule of Civil Procedure 57 gives the Court the power to "order a speedy hearing of an action for declaratory judgment and [] advance it on the calendar." Fed. R. Civ. Pro. 57; *see also* 10B Charles Allen Wright et. al., FEDERAL PRACTICE & PROCEDURE § 2768 (3d ed. 1998) ("The provision of Rule 57 that the court may order a speedy hearing and advance it on the calendar is so sensible and appropriate that there is a dearth of decided cases involving the provision. Nevertheless it has been applied to effectuate the purpose of the rule and expedite a decision.").

Advancing consideration of the merits of PhRMA's claims and consolidating the hearing on the preliminary injunction with a speedy resolution of the merits pursuant to Federal Rules of Civil Procedure 65(a)(2) and 57 is both appropriate and necessary. *First*, consideration of the merits of PhRMA's claims for declaratory judgment at this time is appropriate because the issues

in this case are legal in nature and appropriate for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). PhRMA's constitutional claims all challenge the D.C. Act by its terms and do not depend on the development of any facts that are material to the resolution of its legal claims.

*Second*, moving immediately to a trial on the merits is necessary because it is the only way for the Court to provide PhRMA with fully effective relief. The only way that the Court can prevent PhRMA members from being subject to a multiplicity of suits by myriad "private attorneys general" (in effect, *anyone* who feels that he or she is "representing the public interest") is to issue a declaratory judgment simultaneously with the Act's taking effect, declaring it unconstitutional. A preliminary injunction barring the Defendants — all District of Columbia governmental entities and officials — from enforcing the Act, while useful, would not be a legal bar to the private suits enabled by the Act. Even a declaratory judgment issued at a *later* date may not provide fully effective relief. By the time such relief issued, multiple suits would likely be under way, burdening the constitutional rights at issue. Moreover, without a declaration of the Act's invalidity that is contemporaneous with its becoming effective, as of the effective date — in light of the threat of enforcement through private suits — PhRMA members will be forced to consider changing their business practices in the United States and abroad to reduce their potential liability. Thus, if a final judgment is delayed, PhRMA members will be irreparably injured and denied the relief the Declaratory Judgment Act is intended to provide.[1]

---

[1] *See Perez v. Ledesma*, 401 U.S. 82, 112 (1971) ("The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity.") (quoting H.R. Rep. No. 73-1264, at 2 (1934)); 10B Charles Allen Wright et. al., FEDERAL

Indeed, in opposing PhRMA's request for a TRO, the District itself argued that preliminary relief was not necessary because the Court would be able to issue a final judgment declaring the legislation invalid prior to the Act's effective date. The District expressly argued that the Court need not enjoin publication of the Act because the Court's "invalidation of the Act — *prior to its effective date*" would provide the remedy of avoiding a multiplicity of suits. *See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a TRO at 4 (emphasis added). The District further observed that full consideration of the merits of PhRMA's claims would be possible before the effective date of the Act, correctly asserting that the Court had the option of "adopting a reasonable briefing schedule, *completed in advance of the effective date of the Act* (assuming Congress takes no action), so that the Court will have the benefit of the District's *full consideration* of the complex issues implicated here." *Id.* at 11 (emphasis added). The District should not be permitted to avoid a TRO against publication of the Act on the ground that final relief could be issued prior to the effective date, and then turn around and oppose the establishment of a process to enable the entry of such relief. Indeed, precisely the proceeding advocated by the District defendants in their TRO opposition is a needed and appropriate alternative manner of protecting the constitutional rights at issue.

Finally, proceeding immediately to a disposition on the merits would simplify the issues in this case. Defendants have stated their intent to seek "discovery on an expedited basis on (at least) issues related to plaintiff's irreparable harm." October 19, 2005 Joint Status Report at 2. Although PhRMA does not agree that such discovery is necessary or appropriate in any event,

---

PRACTICE & PROCEDURE § 2751 (3d ed. 1998) (noting Declaratory Judgment Act's goals of permitting "avoid[ing] a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.").

granting this motion and proceeding to the question of permanent relief would obviate any possible need for discovery related to irreparable harm; irreparable harm is not a requirement for permanent injunctive or declaratory relief.

## CONCLUSION

PhRMA respectfully requests that the Court advance consideration of the merits of PhRMA's claims and consolidate that consideration with its hearing on PhRMA's motion for preliminary injunction pursuant to Federal Rules of Civil Procedure 65(a)(2) and 57.

Dated: October 21, 2005                             Respectfully submitted,

                                                                                                                          s/ David W. Ogden
David W. Ogden (D.C. Bar No. 375951)
Randolph D. Moss (D.C. Bar No.417749)
Jonathan J. Frankel (D.C. Bar No. 450109)
WILMER CUTLER PICKERING HALE AND DORR LLP
2445 M Street, N.W.
Washington, D.C. 20037-1420
(202) 663-6000
(202) 663-6363 (facsimile)

Counsel for Plaintiff Pharmaceutical Research and Manufacturers of America