## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PHARMACEUTICAL RESEARCH AND ) 
MANUFACTURERS OF AMERICA, )
                               )
        Plaintiff, )
                               )
      v. )           Civil Action No. 1:05-cv-2015 (RJL)
                               )
THE DISTRICT OF COLUMBIA, et al., )
                               )
        Defendants. )
_____)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED DISCOVERY

Plaintiff Pharmaceutical Research and Manufacturers of America ("PhRMA") submits this Memorandum of Points and Authorities in Opposition to Defendants' Motion for Expedited Discovery. Defendants have not even attempted to explain, except in the most generic terms, why they need this discovery, which is burdensome and would put the expedited resolution of this case at risk. Plaintiff's claims in this litigation are *entirely* legal. Moreover, consolidating the preliminary injunction hearing with a determination of the merits (as Plaintiff has separately requested) would eliminate the one issue in the case to which virtually *all* of Defendants' proposed discovery appears to be addressed: the question of irreparable harm. Defendants' motion should therefore be denied.

## BACKGROUND

On October 12, 2005, PhRMA filed a complaint against Defendants challenging the constitutionality of the Prescription Drug Excessive Pricing Act of 2005 (the "Act") and a

Motion for Temporary Restraining Order and Preliminary Injunction. PhRMA sought

immediately to enjoin publication of the Act in the D.C. Register — a step necessary to put it

into effect — and it also requested a declaration that the Act is invalid and a permanent

injunction against enforcement. In their opposition to PhRMA's T.R.O. application, Defendants

indicated that enjoining publication of the Act pending resolution of the merits was unnecessary

because the Court could decide the merits of PhRMA's challenge prior to the Act's effective

date. Defs.' Mem. in Opp'n to Pl.'s Mot. for T.R.O. 4. Indeed, Defendants specifically noted

that the Court could adopt a briefing schedule that would be "completed in advance of the

effective date of the Act (assuming Congress takes no action), so that the Court will have the

benefit of the District's full consideration of the complex issues implicated here." *Id.* at 11.

Defendants made no mention of any need for discovery until after this Court denied PhRMA's

T.R.O. application. On that record containing Defendants' assurances, this Court denied

PhRMA's request for a T.R.O. on October 13, but made clear that — as Defendants had

suggested in lieu of emergency relief — it would attempt to decide PhRMA's claims on an

expedited basis.

On October 21, PhRMA filed a Motion Under Rule 65(a)(2) and Rule 57 for an Order

That the Merits of Plaintiff's Action for Declaratory Judgment Be Advanced and Consolidated

With the Hearing of Its Application for Preliminary Injunction (the "Consolidation Motion").

PhRMA seeks consolidation because the claims present purely legal questions, and resolution of

the claims on or close to the Act's effective date is necessary to ensure PhRMA and its members

receive complete relief. Defendants have not yet responded to that motion.

On October 26, a full two weeks after PhRMA filed suit, and twelve days after this Court

indicated its intent to resolve this case on an expedited basis, Defendants filed the Motion for

Expedited Discovery (the "Discovery Motion"). In this motion, Defendants seek to depose

PhRMA's Senior Assistant General Counsel, Marjorie E. Powell; to take an additional deposition

of PhRMA under Fed. R. Civ. P. 30(b)(6); and to serve broad and burdensome interrogatories

and document requests under Fed. R. Civ. P. 33 and 34. *See* Defs.' Disc. Mot. 1. Defendants'

proposed demands for written and paper discovery on their face would require information and

documents not just from PhRMA, but also from the more than one hundred PhRMA member

companies, not one of which is a party to this case. *See id.*, Ex. A at 6-7, Ex. B at 4-5. And

Defendants' proposed demands would require that the time for PhRMA to collect and report this

information from its own files and its one-hundred-plus members be shortened to five days,

including weekends and holidays. *See* Defs.' Disc. Mot. 1; Defs.' Mem. in Supp. of Disc. Mot. 3

("Defs.' Mem.").

Remarkably, although Defendants seek a large amount of detailed information — and

repeatedly make clear that this is just their "preliminary" round of discovery, *see id.* at 1 — they

offer no specific explanation *why* this information would aid the Court's determination of the

issues presented in this case. Defendants simply assert, without elaboration, that discovery will

help them "better respond to the arguments made" by PhRMA. *Id.* at 2. They also assert, again

without any explanation, that discovery will "assist Defendants in demonstrating to the Court

that there are substantial and significant factual issues raised by Plaintiff's arguments." *Id.* at 3.

## ARGUMENT

The Discovery Motion should be denied. Defendants' burdensome and inappropriate

discovery requests threaten to undermine the expedited schedule for resolution of PhRMA's

claims, a schedule that is essential to ensuring PhRMA any possibility of complete relief.

Moreover, it is clear that PhRMA's claims about this manifestly unconstitutional law rest on the

Act itself and its obvious and intended effects, and turn on no issue of even conceivably disputed fact. Defendants' failure to identify *any* specific issue to which factual discovery might be relevant simply reinforces the reality that the case presents only legal questions that require no discovery.

1.  *None of Plaintiff's Claims Involves Disputed Facts As to Which Discovery Is Needed;*
    *Consequently, None of the Requested Discovery Is Needed or Appropriate.*

Although Defendants assert generically that Plaintiff's claims raise "substantial and significant factual issues," *id.* at 3, they studiously avoid saying which claims those might be, or what the issues are. In fact, there are no issues of fact that could plausibly be in dispute. PhRMA's complaint raises purely legal challenges that do not depend on disputed material facts; the Act is patently unconstitutional based on its obvious and intended effects and thus expedited resolution is appropriate. Moreover, expedited resolution is urgently needed; in order to avoid the myriad private enforcement actions that the Act will spawn, PhRMA must obtain declaratory relief on or about the time the Act would otherwise take effect. Absent a declaratory judgment in that time frame, the full unconstitutional consequences of the law will be imposed and this Court's ability to ameliorate them will plainly be substantially reduced.

None of PhRMA's legal arguments turns on disputable material facts. First, PhRMA claims the Act is preempted by the federal patent laws. The federal government has enacted a comprehensive set of laws regulating patent protections for pharmaceuticals. These laws are carefully calibrated to provide particular incentives for research and development of drugs that Congress has deemed necessary for the public health. Yet the Act boldly proclaims that the market prices of patented pharmaceuticals that have resulted under federal law are "excessive," Act § 2 (§ 28-4551(1)), and by its terms, the Act seeks to presumptively yoke these prices to government-regulated prices prevailing under different legal regimes in foreign countries, *id.* (§

28-4554(a)).  Thus the Act purports to replace Congress's judgment as to what prices best

promote the public health with the judgments of D.C. legislators and judges and foreign price-

control regimes.  The preemption question is whether this Act "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath

Packing Co.*, 430 U.S. 519, 526 (1977) (citation omitted).  And as in *Pacific Gas and Electric

Company v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190,

201 (1983), "[t]he question of preemption" presented here "is predominantly legal."

Accordingly, no facts apart from the entirely obvious proposition that drives the Act itself — that

pharmaceutical manufacturers produce and market patented pharmaceuticals — conceivably

affect the resolution of that claim.

Second, PhRMA claims the Act violates the Interstate Commerce Clause by regulating

manufacturer sales overwhelmingly taking place beyond the District's borders.  The Supreme

Court has made clear that a state statute that regulates the prices of transactions "wholly outside"

the state is per se invalid.  *See, e.g., Healy v. Beer Inst.*, 491 U.S. 324, 336-37 (1989); *Brown-

Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579, 581-82 (1986).

Which sales the Act regulates are evident from its text.  The Act's language clearly reaches

beyond the District to *any* manufacturer sale anywhere in the world that "results in" an eventual

downstream sale in the District at an "excessive price." Act § 2 (§ 28-4553).  And again, the one

fact underlying that claim — where the bulk of those sales takes place — cannot be in genuine

dispute or question: there are *no* PhRMA members, *no* major wholesalers, and *no* receiving

5

warehouses of the major pharmacy chains located in D.C.[1] No other facts are relevant to whether the Act has an unconstitutional extraterritorial reach, and discovery would accomplish nothing other than needless expense and delay.

Finally, PhRMA has alleged that the Act violates the Foreign Commerce Clause and impedes the federal government's ability to conduct foreign relations. These questions again rely on the text of the Act and its obvious and intended effects. The Act creates an express link between the prices in the District and the prices in four foreign countries. *See* Act § 2 (§ 28-4554(a)). The Supreme Court has made clear that — without more — such links would violate the Interstate Commerce Clause if they involved sister states rather than foreign nations, *see, e.g., Healy,* 491 U.S. at 337-38, and the Court has further held that the restrictions imposed by the Foreign Commerce Clause are even tighter than those of its interstate counterpart, *see, e.g., Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 448-49 (1979). The Supreme Court has also made clear that state statutes inviting local courts to opine on the wisdom of foreign regulations — which the Act also does by its inevitable effect — impinge on the federal government's exclusive constitutional power to conduct foreign affairs. *See generally Zschernig v. Miller,* 389 U.S. 429 (1968); *see also* Pl.'s Mem. in Supp. of its Mot. for T.R.O. and Prelim. Inj. 32-35 ("Pl.'s Prelim. Inj. Mem."). Defendants have not pointed to any factual matters that bear on the legal questions whether the District has impermissibly acted against foreign commerce or impinged on the federal foreign affairs power, and there are none.

---

[1] In any event, Defendants would not need discovery from the PhRMA to confirm these facts: they already have business license and other records at their disposal establishing what businesses are located within the District's boundaries.

If Defendants truly believe "there are substantial and significant factual issues raised by Plaintiff's arguments," Defs.' Mem. at 3, rendering summary judgment inappropriate, they may argue against summary judgment with appropriate specificity at the appropriate time. *See* Fed. R. Civ. P. 56(c), 56(f). But the bare *assertion* of disputed facts does not give rise to an automatic right to discovery; Defendants must show particular need. *See* Fed. R. Civ. P. 56(f) (permitting discovery only where "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition"); *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (discovery denied where party sought only "an opportunity to test and elaborate the affidavit testimony already entered" and did not "demonstrat[e] the necessity and utility of discovery to enable her to fend off summary judgment"); *Greenberg v. Food & Drug Admin.*, 803 F.2d 1213, 1224 (D.C. Cir. 1986) (request for discovery under Rule 56(f) can be denied if "the discovery sought appears irrelevant, or if discovery would be wholly speculative"). At this point, Defendants have merely asked for a fishing license — to be permitted to embark on discovery in an effort to find issues of fact. But their bare assertions that discovery is needed cannot justify a fishing expedition that will impose needless costs and put the timely resolution of the case in serious jeopardy.

> 2. *The Question of Irreparable Harm Does Not Turn on the Resolution of Disputed Facts and, in Any Event, Drops Out of the Case Upon Consolidation with a Hearing on the Merits.*

Because Defendants never actually specify what facts or claims they think are in dispute, Plaintiff can only speculate on their intentions from their proposed discovery. It appears that the bulk of that discovery is directed towards PhRMA's claims of irreparable harm. But that question does not turn on disputed facts. *First,* PhRMA claims *per se* irreparable harm because

its members are subjected to a law that is preempted and violates the Commerce Clauses.[2]

*Second*, PhRMA claims irreparable harm from the Act's very terms and their obvious and intended effects. The Act contains an explicit finding by the D.C. Council that current patented prescription drug prices are "excessive" (in its view) and must come down, *see* Act § 2 (§ 28-4551(1)); it explicitly regulates the prices of manufacturers' transactions throughout the United States or the world provided only that they "result[] in" in a downstream sale in the District at an "excessive price," *id.* (§ 28-4553); and it explicitly empowers any private person or organization to sue based on any eventual downstream D.C. sale, *id.* (§§ 28-4555(a), 28-4552(1)). Plaintiff is permitted to assume that the Act will operate as intended.

As the Supreme Court has explained in comparable circumstances, "this Court's pre-emption cases do not ordinarily turn on such compliance-related considerations as whether a private party in practice would ignore state legal obligations — paying, say, a fine instead — or how likely it is that state law actually would be enforced. Rather, this Court's pre-emption cases ordinarily assume compliance with the state-law duty in question." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 882 (2000). Plaintiff — and this Court — may assume that the Act will do what it says and force manufacturers to lower prices on patented prescription drugs destined for D.C. Plaintiff — and this Court — may also assume that the "private attorneys general" provision of the Act will operate as intended, meaning that manufacturers will be

---

[2]      *See* Pl.'s Prelim. Inj. Mem. at 36-38. *See also* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2948.1 (2005) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *United States v. Ferrara*, No. 92-2869, 1993 WL 405477, at *1 (D.D.C. Feb. 8, 1993) (violation of the Supremacy Clause alone constitutes irreparable harm); *American Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168 (S.D.N.Y. 1997) (dormant Commerce Clause violation creates irreparable harm).

subject to countless private lawsuits if the Act goes into effect — and given the utter opacity of the Act's standard — regardless of efforts by manufacturers to modify their behavior. As PhRMA has demonstrated, *see* Pl.'s Prelim. Inj. Mem. at 38-42, the case law shows that in these circumstances PhRMA's members cannot avoid irreparable injury. *See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (finding irreparable harm where plaintiffs had to decide between violating a law and conforming their conduct to an unconstitutional law where they were subject to "repetitive penalties" and exposed to "potentially huge liability"); *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 673-74 (D.C. Cir. 2005) (finding irreparable harm where plaintiff must alter business operations to conform with the law and the economic harm would be difficult to measure).

In any event, the question of irreparable injury drops out of the case if the Court grants PhRMA's Consolidation Motion. If the Court decides, as Plaintiff believes appropriate, to move immediately to the consideration of *permanent* relief, the existence of irreparable injury during the pendency of this litigation becomes irrelevant. *See Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 46 n.18 (D.D.C. 2000) (denying request for discovery into launch-readiness of generic drug, which went to the question of irreparable harm, because preliminary injunction and summary judgment motions had been consolidated and issue of launch-readiness was "immaterial to [the] analysis of the merits"); *see also* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2944, at 93-94 (2d ed. 1995) ("[I]rreparable injury is not an independent requirement for obtaining a permanent injunction."). Because all or virtually all of Defendants' proposed discovery appears directed toward an issue that may well become moot, the Court should not authorize discovery without considering Plaintiff's Consolidation Motion.

3. *The Proposed Discovery Is Overly Burdensome, Is Legally Inappropriate, and Will Delay the Expedited Resolution of this Case That Defendants Themselves Proposed in Place of a T.R.O.*

Defendants insist that the "need for expedited discovery is immediate and compelling." Defs.' Mem. at 2. They also state that they are "not seeking to postpone any of the above dates" (referring to the briefing schedule). *Id.* The sheer scope of Defendants' information and document requests, however, strongly suggests that this is a strategic maneuver to manufacture disputes where none exists and delay resolution of the litigation beyond the effective date of the Act.

Defendants' proposed discovery is exceedingly burdensome. It will clearly take longer than five days for PhRMA to collect all of the documents and information requested from PhRMA's one-hundred-plus members — none of which is actually a party to the litigation. For example, Defendants seek information concerning the names, quantities, and dollar amount of drugs sold by each of PhRMA's members in the District as well as in the four foreign countries specified in the Act. *See id.*, Ex. A at 6-7, Ex. B at 4-5. The burden imposed by this wide-ranging request is obvious. Moreover, demanding not one but two depositions of PhRMA officials and interrogatories and documents from all of Plaintiff's members plainly imposes burdens out of all proportion to any of the benefits of such discovery — none of which Defendants have even bothered to identify and none of which is, in any event, readily apparent. Given that Defendants themselves argued that a T.R.O. was unnecessary because the Court could resolve PhRMA's claims on the merits prior to the Act's effective date, they should not now be permitted to throw up roadblocks to prevent that speedy resolution.

The proposed discovery is also legally inappropriate. Defendants seek information not merely from PhRMA, but also from its more than one hundred member companies. In addition

10

to sales information in the District and in four foreign countries, the document requests pertain to studies of the Act's impact "done by or on behalf of Plaintiff or any of its members" and to "[a]ll documents" relating to the changes that members would need to make in response to the Act, including steps to be taken to conform their business operations. *See id.*, Ex. B at 4. Contrary to Defendants' burdensome demands, Rules 33 and 34 do not allow a litigant to pierce through an organizational opponent and seek discovery from the members of that organization that are not themselves parties to the litigation. *See, e.g., Sherwin-Williams Co. v. Spitzer*, No. 1:04CV185, 2005 WL 2128938, at *9-10 (N.D.N.Y. Aug. 24, 2005) (defendants could not obtain records from individual members of plaintiff organization through Rule 33 and 34 discovery, but rather were required to seek information directly from members through non-party subpoenas); *cf. New Hampshire Motor Transp. Ass'n v. Rowe*, 324 F. Supp. 2d 231, 236-37 (D. Me. 2004) (observing that where an organization's members are not parties to a case involving the organization, information can be obtained from the members via subpoenas *duces tecum*); *University of Texas v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (finding that the district court acted without jurisdiction in finding that nonparty members of organization were "real parties in interest" and ordering them to respond to interrogatories under Rule 33). Thus, even if the Court were to grant Defendants' Motion for Expedited Discovery — and for the reasons set forth above this motion should be denied — this Court should limit any discovery strictly to PhRMA itself and matters within its custody and control and deny permission to conduct discovery of PhRMA's members through demands directed to PhRMA.

11

## CONCLUSION

PhRMA respectfully requests that the Court deny Defendants' Motion for Expedited

Discovery.


Dated:  October 28, 2005                             Respectfully submitted,


                                    _____s/Randolph D. Moss_____
                                    David W. Ogden (D.C. Bar No. 375951)
                                    Randolph D. Moss (D.C. Bar No. 417749)
                                    Jonathan J. Frankel (D.C. Bar No. 450109)
                                    WILMER CUTLER PICKERING HALE AND
                                    DORR LLP
                                    2445 M Street, N.W.
                                    Washington, D.C.  20037-1420
                                    (202) 663-6000
                                    (202) 663-6363 (facsimile)

                                    *Counsel for Plaintiff Pharmaceutical Research
                                    and Manufacturers of America*