UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>        Defendants. | Civil Action No. 05-2015 (RJL) |
| BIOTECHNOLOGY INDUSTRY ORGANIZATION,<br><br>        Plaintiff,<br><br>    v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>        Defendants. | Civil Action No. 05-2106 (RJL) |

DEFENDANTS' POST-TRIAL BRIEF ON STANDING

The defendants herein (collectively, "the District"), by and through undersigned counsel pursuant to the order of the Court on November 23, 2005, hereby submit this post-trial brief on standing.[1]

---

[1] Although the District did not raise the issue of standing in its Opposition to the Preliminary Injunction, it did assert the defense in its Answer to both complaints, and also argued the point during the merits trial of this matter. Moreover, standing is jurisdictional and not subject to waiver. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996) (citing *U.S. v. Hays*, 515 U.S. 737, 742 (1995) (courts are required to address the issue even if the parties have failed to raise it)).

**I. Introduction and Background**

Neither plaintiff has standing here, because neither plaintiff has anywhere alleged—much less proven—that any one of their members sells a drug that would expose them to liability under the D.C. Act.

On October 21, 2005, plaintiff PhRMA filed its "Motion Under Rule 65(a)(2) and Rule 57 for an Order That the Merits of Plaintiff's Action for Declaratory Judgment be Advanced and Consolidated With the Hearing of its Application for Preliminary Injunction."[2] The District opposed the motion.

On November 10, 2005, despite their previous motion to consolidate their request for emergency injunctive relief with the trial "on the merits," plaintiffs filed their Reply to the District's Opposition, recharacterizing the motion as one in which they "asked that their preliminary injunction motions be treated as motions for summary judgment," and filing a purported Statement of Material Facts Not in Dispute. The Court heard argument on November 15, 2005. The Court granted PhRMA's motion to advance the trial on the merits by Minute Order dated November 17, 2005.

---

[2] Fed. R. Civ. P. 65(a)(2) authorizes a court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application [for preliminary injunction]." Similarly, Fed. R. Civ. P. 57 authorizes a court to "order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

A party's request for (or lack of timely objection to) consolidation under Rule 65(a)(2) waives its right to present further evidence beyond the hearing consolidating the preliminary injunction hearing and the trial on the merits. *See Aponte v. Calderon*, 284 F.3d 184 (1st Cir. 2002), *cert denied*, 537 U.S. 886 (2002); *D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2nd Cir. 2002), *cert denied*, 537 U.S. 1028 (2002). *Cf. Anderson v. Davila*, 125 F.3d 148, 158–59 (3rd Cir. 1997) (government did not waive its objection to consolidation of preliminary injunction hearing with trial on the merits where "[t]he district court did not state its intention to treat the hearing as a trial on the merits until after all testimony had been taken and all evidence had been submitted.").

The Court conducted the trial on the merits on November 23, 2005. At the conclusion of the trial, the Court ordered the parties to file post-trial briefs on the standing issue.

## **II. Argument**

"Article III, of course, gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154–155 (1990). In other words, a federal court's jurisdiction can only be invoked when a plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

A plaintiff bears the burden of establishing its standing to sue, and, if unclear, it must prove standing by a "substantial probability . . . ." *Nat'l Assn. of Home Builders v. Army Corps of Engineers*, 417 F.3d 1272, 1286 (D.C. Cir. 2005) (*citing Sierra Club v. EPA*, 292 F.2d 895, 899 (D.C. Cir. 2002)). *See also, e.g., American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 764 (D.C. Cir. 1997) (party that seeks to invoke a court's jurisdiction "is required to 'clearly . . . allege facts' demonstrating its standing under Article III.") (*quoting Hays*, 515 U.S. at 742).

Moreover, if a plaintiff's standing is challenged, it must respond affirmatively. *American Library Assn. v. FCC*, 401 F.3d 489, 495 (D.C. Cir. 2005) (if a defendant raises a "comprehensible challenge" to plaintiff's standing, plaintiff "is well advised to respond with precision and clarity to make it clear that standing is present.").

For plaintiffs to have standing, they must show (1) concrete, personal injuries to the plaintiffs, (2) which must be fairly traceable to the defendants' conduct, and (3) such injury must be "likely" to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992); *Kurtz v. Baker*, 829 F.2d 1133, 1138 (D.C. Cir. 1987), *cert. denied*, 486 U.S. 1059 (1988)). If plaintiffs cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing.

An organization has standing only if it meets a *separate* three-prong test. *Truckers United for Safety v. Mead*, 251 F.3d 183, 188–89 (D.C.Cir.2001). Such standing exists where the organization's members (1) would have standing to sue in their own right, (2) the interests that the organization seeks to protect are germane to its purposes, and finally, (3) neither the claims asserted nor the relief requested requires the participation of each of the organization's individual members. *Id*. (*citing Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 342–43 (1977)); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Fund Democracy, LLC v. SEC*, 278 F.3d. 21, 25-26 (D.C.Cir.2002) (applying test from *Laidlaw* and finding a lack of standing where a company failed to show individuals would have standing to sue in their own right). *See also Grassroots Recycling Network, Inc. v. EPA*, ___ F.3d ___, 2005 WestLaw 3078187 (D.C. Cir. Nov. 18, 2005) (organizational plaintiff "bears the burdens of production and proof: It 'must support each element of its claim to standing by affidavit or other evidence . . . .' Its burden of proof is to show a substantial probability" that the challenged action "causes at least one of its members an injury that is 'concrete and particularized' and 'actual or imminent,' not 'conjectural or hypothetical'") (*quoting Sierra Club* and *Lujan*).

"Organizations are 'obligated to allege facts sufficient to establish that one or more of [their] members has suffered, or is threatened with, an injury.'" *American Immigration Lawyers Assn. v. Reno*, 18 F.Supp.2d 38, 50–51 (D.D.C. 1998) (*quoting Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.23 (1982)).

Plaintiffs have failed to meet their burden here, not even *alleging* that any of their members will face liability under the D.C. Act. Plaintiffs purport to read the Act as much broader than its text supports.

The Act conditions liability on the sale in the District of a prescription drug for an "excessive price." Act § 2. That term is not specifically defined in the Act, but plaintiffs would have the Court believe that their members face "injury" on that basis alone. Plaintiffs are incorrect; the Act establishes only one method for a prospective plaintiff to demonstrate "excessive pricing"—by showing that the sale in the District occurred at a rate of 30% (or higher) than the comparable price in the referenced "high income" countries. *Id*. That showing, if made, is *prima facie* proof of excessive pricing, and shifts the burden to the defendant manufacturer or wholesaler to rebut the claim. Consequently, a plaintiff *cannot* proceed with a suit until it shows—at a minimum—that a District drug price is at least 30% higher than a reference price. Thus, if none of plaintiffs' members sell any of their drugs for that "30% higher" amount, none of them could conceivably face liability under the Act. Because plaintiffs have not alleged that any drug sold by any of their members meets this test, plaintiffs lack standing here.

*Plaintiffs' Allegations are Plainly Insufficient to Show Standing.*

At oral argument on November 23, 2005, plaintiffs repeatedly pointed to ¶ 47 of the PhRMA Complaint as the source for allegations supporting standing. A close reading of the paragraph, however, fails to reveal *any* allegations of present or future injury, or that any of plaintiffs' members sell any drug at a price that could potentially trigger suit under the Act (much less liability), or even any allegations that any of plaintiffs' members will otherwise be subject to the Act for any reason.

While PhRMA complains that, if the Act becomes effective, "it will unleash a potentially unlimited number of enforcement actions," Complaint ¶ 11, and put its members "at significant risk of being sued," *id*. ¶ 53, it never explains *how* these feared injuries will occur, or specifies which members sell which drugs that *may* implicate the Act. Such vagueness is insufficient to support standing.

Similarly, PhRMA broadly asserts that because "many" of the prescription drugs made and sold by its members are covered by patents, sale of those drugs "is directly regulated by the Act." *Id*. ¶16. Such a speculative chain is plainly insufficient to support the inference of standing here; at a minimum, plaintiffs should have identified at least one patented drug manufactured and/or sold by one of their members at a rate that might trigger suit under the D.C. Act. Plaintiffs failed to do so, however. The closest PhRMA comes to that showing is its assertion that "[a] drug manufacturer whose drug is sold at a price that arguably triggers the D.C. Act's presumption of excessiveness will face tremendous risk under the Act." *Id*. ¶55. The District avers that that generic allegation is insufficient to support standing.

*Plaintiffs Must Have Standing At Each Stage of the Litigation.*

Courts must resolve Article III standing questions before proceeding to the merits of a case. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88–89 (1998). Additionally, "the merits inquiry and the statutory standing inquiry often overlap" and "are sometimes identical, so that it would be exceedingly artificial to draw a distinction between the two." *Id*. at 97 n.2.

"[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of

evidence required at the successive stages of the litigation.'" *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (unanimous decision) (*quoting Lujan*, 504 U.S. at 561). *See also Massachusetts v. EPA*, 415 F.3d 50, 55 (D.C. Cir. 2005) (to establish standing, a plaintiff "has the same burden of production as a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence.'").

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to support standing, because courts assume plaintiffs can back up those claims with specific evidence at trial. *Lujan*, 540 U.S. at 561; *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003) (same).

However, parties invoking a federal court's jurisdiction at summary judgment may not rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" demonstrating standing. *Lujan*, 504 U.S. at 561 (*quoting* Fed.R.Civ.P. 56(e)). Similarly, although a plaintiff can set forth by affidavit or other evidence specific facts to survive a motion for summary judgment on standing, *Bennett*, 520 U.S. at 168, that plaintiff "must ultimately support any contested facts with evidence adduced at trial" to show standing. *Id*. *See also Massachusetts*, 415 F.3d at 55 (in support of standing, at "'the final stage' the evidence plaintiff presented at summary judgment, 'if controverted, must be 'supported adequately by the evidence adduced at trial.''") (*quoting Lujan*).

Here, plaintiffs have failed at *each* stage of the proceedings to demonstrate standing— they failed to even allege that any of their members would be specifically injured by falling under the provisions of the Act, their proffered declarations failed to identify a single drug which

would trigger the Act's provisions, and they produced no additional evidence at the trial on the merits to support their standing.[3]

Plaintiffs failed to present adequate evidence at *any* stage of the proceedings to support standing, and it is too late to do so now, after the trial on the merits.[4]

*Plaintiffs' Feared Injuries are Too Speculative to Support Standing.*

A plaintiff will not have standing if a court must accept a speculative inference or assumption to link the alleged injury to the challenged action. *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228 (D.C.Cir.1987). A plaintiff must plead and prove *specifics*.

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or

---

[3] This despite the fact that the District raised standing as a defense in its answers to the complaints.

[4] *Cf. American Library*, 401 F.3d at 495 (even after appellate argument, Circuit has authority to seek additional information from a party to clarify its standing). *But cf. id*. at 496–97:

> I dissent from what appears to me to be provision of an opportunity to a petitioner before this Court to create a new record establishing justiciability and jurisdiction not present in the record before us.
> * * *
> However, the broad invitation and detailed "road map" offered in the majority's opinion appears to me not to ask the petitioner to clarify its standing, but to offer us a further record to create standing where none is present on the record before us.

*Id*. (Sentelle, J., dissenting) (*citing America West Airlines, Inc. v. Burnley*, 838 F.2d 1343 (D.C. Cir. 1988) (petition for review dismissed where party could not demonstrate standing on the basis of existing record)).

hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted). *See also Whitmore*, 495 U.S. at 158 ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiffs have not shown any "certainly impending" injury.

To have standing, plaintiffs must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *Field v. Brown*, 610 F.2d 981, 990 (D.C. Cir. 1980). *See also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.")[5]

For standing in a preenforcement challenge, plaintiffs must show that they are "presently or prospectively" subject to the challenged law. *Laird*, 408 U.S. at 11; *Al-Owhali v. Ashcroft*, 279 F.Supp.2d 13, 25 (D.D.C. 2003) (*citing Laird*); *see also Babbitt*, 442 U.S. at 298 ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.") (*citing O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

This is the central failure of plaintiffs' case: their evidence and allegations are not specific and fail to show that any member faces a "realistic danger" of being sued under the Act, even assuming such suit, alone, would constitute "injury." Plaintiffs have not alleged or shown

---

[5] Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely. Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Field*, 610 F.2d at 990 (*quoting Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961)).

that *any* of their members sell *any* drug subject to the provisions of the D.C. Act, hence they lack standing. *See American Coalition*, 128 F.3d at 765 (association lacked standing because it "never identifies any specific instances in which [challenged government action] harmed an [association] member.").[6]

"[N]owhere does [plaintiff] point to any evidence 'supporting the proposition that there is a 'substantial probability' of 'actual or imminent' injury to its members arising from" the challenged government action; its proffered declaration "offers plenty of speculation . . . ." *Nat'l Assn. of Home Builders*, 417 F.3d at 1288 (*quoting Sierra Club*, 292 F.3d at 902)). *See also American Immigration*, 18 F.Supp.2d at 51 (plaintiff associations lacked standing because they failed "to identify any of the factual circumstances supporting [their] claim to be subject to the regulation" and because plaintiffs failed to "allege facts sufficient to establish the harm to" any member).

Identically here, plaintiffs fail to even allege facts sufficient to demonstrate that any of their members likely will be sued under the Act.

The most that plaintiffs can offer is a vague fear of future lawsuits by unknown third parties. Such conjecture is insufficient to support standing. "[S]peculative claims dependent upon the actions of third parties do not create standing for the purposes of establishing a case or controversy under Article III." *Gettman*, 290 F.3d at 435. "This 'multi-tiered speculation,' instances events that, although by no means impossible, are at this time neither actual nor imminent but wholly conjectural." *Grassroots Recycling*, 2005 WestLaw 3078187 at * 3 (*quoting La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383 (D.C. Cir. 1996)).

---

[6] *See also id*. at 765 ("With work or with time, [the association] may be able to locate a member who has constitutional standing to challenge the [government action]. But it has not yet successfully borne that burden.") (*citing Hays*, 515 U.S. at 742–43).

Because plaintiffs challenge the D.C. Act before its effective date, this matter is a "preenforcement challenge." *See, e.g., Seegars v. Gonzalez*, 396 F.3d 1248, 1251 (D.C. Cir. 2005). To support standing, at a minimum, a plaintiff must at least allege "an intention imminent or otherwise to violate the statute . . . ." *Id.* (*quoting Martin Tractor Co. v. FEC*, 627 F.2d 375, 382–83 (D.C. Cir. 1980)). Plaintiffs here have failed to allege this constitutional minimum—that *any* of their members will, or even might, violate the D.C. Act.[7] Consequently, plaintiffs lack standing.

It is of no moment that the D.C. Act empowers the District government to bring suit. *See, e.g., Seegars*, 396 F.3d at 1253 (this Circuit's preenforcement standing cases "appea[r] to demand more than a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law.") (*citing Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997)).[8]

To show preenforcement standing, then, a plaintiff must show "a threat of prosecution reaching the level of imminence required by *Navegar*." *Seegars*, 396 F.3d at 1255. Analyzing that alleged threat of prosecution "is a factual and case-specific one" requiring courts to look at a number of factors. *Navegar*, 103 F.3d at 999 (*citing, inter alia, Lion Mfg. v. Kennedy*, 330 F.2d 833, 839 n.10 (D.C. Cir. 1964) (federal court "intervention must, at the very least, rest upon a

---

[7] In fact, plaintiffs do not allege that any member would be subject to suit under the Act if it became effective tomorrow.

[8] The *Navegar* court noted that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides the mechanism for seeking preenforcement review of criminal statutes. *Navegar*, 103 F.3d at 998. Preenforcement challenges are most frequently found to be justiciable when the challenged legislation allegedly "chills" conduct protected by the First Amendment. *Id*. at 999. Here, of course, the First Amendment is not implicated in any way.

showing of an immediate and tangible danger to the person assertedly apprehensive of prosecution.")).[9]

Here, in contrast, plaintiffs do not identify any members to whom the Act will likely be applied, and "plaintiffs allege no prior threats [of prosecution] against them or any characteristics indicating an especially high probability of enforcement against them." *Navegar*, 103 F.3d at 999. Nor do plaintiffs allege sufficient facts to raise the threat of imminent suit under the Act, by anyone, much less inevitable *liability* thereunder for any of their members.

### III. Conclusion

In light of the above, the District respectfully requests that the Court find that plaintiffs lack standing, and dismiss this matter.

DATE: December 1, 2005         Respectfully submitted,

                                            ROBERT J. SPAGNOLETTI
                                            Attorney General, D.C.

                                            GEORGE C. VALENTINE
                                            Deputy Attorney General, D.C.
                                            Civil Litigation Division

---

[9] *See also Lion Mfg.*, 330 F.2d at 839–40:

> Just as the complaint alleges no specific threat of prosecution, so it does not allege facts which raise such threat.
>
> * * *
>
> To assert that an act of Congress is unconstitutional on its face is a formidable contention under any circumstances; the least that can be required of one who makes it is that he relate himself clearly to the impingement of the statute. This, in order to create a meaningful lawsuit within our adversary tradition, calls for more than a mere prayer for an adjudication of the statute's invalidity now in order that one may be spared any prospect, however remote, of being obliged to defend oneself later.

*Id*. (footnote omitted).

       /s/ Robert Utiger
ROBERT UTIGER, D.C. Bar No. 437130
Senior Assistant Attorney General
Civil Litigation Division
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6532
Facsimile: (202) 727-3625
robert.utiger@dc.gov


       /s/ Richard S. Love
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431
richard.love@dc.gov


       /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov